## Case No. 4,291.

### The EDWARD BARNARD.

[Blatchf. Pr. Cas. 122.] [1]

District Court, S. D. New York. March, 1862.

BETTS, District Judge. The schooner Edward Barnard, sailing in the name of a neutral and British subject, and laden with 600 barrels of turpentine, ran the blockade of the port of Mobile on the 10th of October last, and was captured on the 15th of the same month, in the Gulf of Mexico, by the United States vessel-of-war South Carolina as a prize. She was anchored by order of the captors off the outlet of the harbor, and her cargo, by order of the United States flag-officer, because of the insufficiency of the schooner and the heaviness of the weather, was transferred on board the United States storeship Nightingale and brought in her to this port, and here libelled for condemnation. Whilst the schooner so lay at anchor, after her capture, a storm arose, and she became stranded and lost, and proceedings in court were only carried on against the cargo so seized and transmitted.

It is fully within the usage of prize courts to entertain and perfect their jurisdiction over property captured on board a vessel without having the vessel itself brought within their cognizance. Proceeds of Prizes of War [Case No. 11,440]; 10 Am. & Eng. Enc. Law, p. 357, art. "Prize," by Story, J.; Jecker v. Montgomery, 18 How. [59 U. S.] 110, and 13 How. [54 U. S.] 498. In many instances this mode of procedure is indispensable, as in the case of capture of enemy property in neutral vessels, and when the enemy vessel is destroyed in capture.

The evidence in preparatorio clearly proves that the cargo belonged to residents of Mobile, and thus became enemy property and good prize of war. The neutral owner of the vessel was also a mercantile resident of the latter place, carrying on trade there, which fact would render his vessel, so employed in aid and to the advantage of the enemy, subject to forfeiture. Jecker v. Montgomery, 18 How. [59 U. S.] 110. But the present proceedings only affect the cargo. Although the arrangements purported to convey title in the vessel to her master, yet it was all palpably factitious and colorable, as the ownership of the vessel was to return to the enemy vendor on his restoring to the supposed vendee the purchase engagement, no actual payment being made on the sale.

[1] [Reported by Samuel Blatchford, Esq.]

These facts transpired on the preparatory examination of the nominal purchaser. It was also proved by the preparatory depositions that a spoliation of papers relating to her cargo, and on board the vessel at the time of her capture, was made by her master and others. It was known at Mobile, by the master and all on board the vessel, when the vessel sailed, that the port was under blockade. The vessel watched her chance and got out covertly.

The proofs are abundantly satisfactory to show that the cargo was enemy property, and was sent to sea in an enemy vessel, the owner well knowing that the port of Mobile was at the time in a state of blockade.

Judgment is, accordingly, given, ordering the condemnation and forfeiture of the property arrested.